UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HOLTGREVEN, and | ) | |
| JACKIE HOLTGREVEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV00553 ERW |
| | ) | |
| O'FALLON POLICE DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Sidney McDonald, Stephen Schneider, Joseph Litzinger, and the City of O'Fallon, Missouri's Motion for Summary Judgment [doc. #28].

## I.    PROCEDURAL BACKGROUND

On April 21, 2008, Plaintiffs Christopher Holtgreven and Jackie Holtgreven (collectively, "Plaintiffs") filed their initial Complaint against the O'Fallon Police Department, Officer Sidney McDonald, Officer Stephen Schneider, Officer Joseph Litzinger, and the City of O'Fallon, Missouri.  The lawsuit arose out of an incident involving Christopher Holtgreven and Officers McDonald, Schneider, and Litzinger, which occurred on April 21, 2007.  On August 19, 2008, Plaintiffs filed an Amended Complaint, which terminated the O'Fallon Police Department from the case.  Thus, Officer Sidney McDonald, Officer Stephen Schneider, Officer Joseph Litzinger, and the City of O'Fallon, Missouri (collectively, "Defendants") remain as the defendants in this case.  The Amended Complaint includes four counts brought by Plaintiff Christopher Holtgreven against Defendant Officers McDonald, Schneider, and Litzinger: I) violation of civil rights under 42

U.S.C. § 1983 and the Fourteenth Amendment, due to the use of excessive and unreasonable

force against Mr. Holtgreven; II) violation of civil rights under 42 U.S.C. § 1983 and the

Fourteenth Amendment, due to failure to intervene; III) state law false imprisonment; and IV)

state law assault and battery/excessive force.  Plaintiffs' Amended Complaint also includes two

counts brought by Mr. Holtgreven against the City of O'Fallon, Missouri, based on respondeat

superior liability: V) negligent training; and VI) negligent hiring.  Finally, Plaintiffs' Amended

Complaint asserts one count brought by Plaintiff Jackie Holtgreven against all Defendants: VII)

loss of consortium.  Defendants filed the pending Motion for Summary Judgment [doc. #28] on

March 27, 2009.

## II.    BACKGROUND FACTS[1]

[1]The Court's recitation of the facts is taken from Defendants Sidney McDonald, Stephen
Schneider, Joseph Litzinger, and the City of O'Fallon, Missouri's Statement of Material
Uncontroverted Facts [doc. # 29-2], Plaintiffs' Statement of Facts as to Which Plaintiffs Contend
Genuine Issues of Fact Exist [doc. #30, p.1-4], and Defendants' Reply to Plaintiffs' Statement of
Facts [doc. #32, p.3-19].  The Court also considered the Deposition of Christopher Holtgreven
[doc. 29-3], and other exhibits, where appropriate.
    The Court notes that Plaintiffs failed to cite to competent record evidence to support
many of the facts listed in their Statement of Facts.  Many of their facts are attributed to specific
pages of their Exhibit C, the Deposition of Christopher Holtgreven.  However, upon close
examination, the Court has discovered that many of the "facts" listed by Plaintiffs are not
supported by the cited portion of the Deposition.  Unless the Court was able to locate the proper
source of the fact, the Court only considered those facts that included a citation to competent
record evidence.
    Plaintiffs also cite to their Exhibit A, the O'Fallon Police Department Offense/Incident
Report related to this incident, to support some of the facts listed in their Statement of Facts.
However, this Exhibit (in its current condition) is inadmissible hearsay because it contains
unsworn statements.  *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001)
(noting that while a document containing attested testimony is admissible for the purpose of
summary judgment, an unsworn statement is hearsay and is not cognizable on a summary
judgment motion).  For the purpose of summary judgment, the Court may "consider only
admissible evidence" and is prohibited from using "affidavits and depositions that were made
without personal knowledge, consisted of hearsay, or purported to state legal conclusions as
fact."  *Murphy v. Mo. Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004).  Thus, the Court

The Court begins by noting that, in a motion for summary judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party. Local Rule 7-4.01(E). The Local Rules also require the opposing party to "note for all disputed facts the paragraph number from movant's listing of facts." *Id.* Any matters that are not specifically controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.* Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Nw. Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In this case, Plaintiffs filed a Statement of Facts as to Which Plaintiffs Contend Genuine Issues of Fact Exist [doc. #30, p.1-4], however they failed to identify which facts listed in Defendants' Statement of Material Uncontroverted Facts they contend are specifically controverted. First, Plaintiffs did not "note for all disputed facts the paragraph number from movant's listing of facts," as required by Local Rule 7-4.01(E). Second, many of the facts contained in Plaintiffs' Statement of Facts are the same as the facts listed in Defendants' Statement of Facts. A fact cannot be considered controverted when both Parties assert that it is true. Because Plaintiffs failed to specifically controvert any of the facts listed in Defendants' Statement of Facts, the Court will deem admitted each fact contained within Defendants' Statement of Facts for the purpose of the pending Motion for Summary Judgment.

will not consider those facts attributed to Exhibit A, nor will it consider any other inadmissible evidence.

3

Turning now to the facts of this case, Defendants Sidney McDonald, Stephen Schneider, and Joseph Litzinger are police officers employed by the City of O'Fallon, Missouri. They graduated from the Eastern Missouri Police Academy and they are licensed peace officers in the state of Missouri. Their training at the Eastern Missouri Police Academy included training on the appropriate use of force in various situations. It also included training on how to evaluate and respond to situations where an individual is experiencing a medical emergency. Officers McDonald, Schneider, and Litzinger also received training in evaluating and responding to emergency medical situations from the City of O'Fallon Police Department. Additionally, prior to the incident, Officers McDonald, Schneider, and Litzinger attended a training session called "Recognizing Diabetes," that was presented by a diabetic police officer with the City of O'Fallon Police Department. Officer Schneider has completed taser certification training on how to appropriately use a taser to subdue an individual.

Plaintiff Christopher Holtgreven was diagnosed in 1986 with Type I diabetes and is an insulin-dependent diabetic. He must check his blood sugar level three times a day, at meal time. He generally checks his blood sugar level in the morning, when he eats lunch, and then when he gets home in the evening. In April 2007, at the time of the incident in question, Mr. Holtgreven used a One Touch portable monitoring device to check his blood sugar levels. The device required him to draw blood and place it on a strip in order to check his blood sugar level, a process which takes about five seconds. Mr. Holtgreven described the testing process as "very quick."

At the time of the incident, Mr. Holtgreven lived in Ellisville, Missouri. He was employed by Fabick Cat in Fenton, Missouri, where he performed field maintenance and repair work on

generators at large facilities that need a backup generator, such as hospitals. His job required him to be on-call 24 hours a day, seven days a week. His employer provided him with a Ford F-350 service truck to drive to and from work that had utility compartments on either side instead of a pick-up bed.

Mr. Holtgreven testified that on Saturday, April 21, 2007, he checked his blood sugar level at around 5:00 a.m. He did not check his blood sugar level a second time before the incident at issue occurred. He ate waffles for breakfast and left his home around 5:30 or 6:00 a.m. to go to Purina's headquarters in downtown St. Louis to perform maintenance on their backup generator. Mr. Holtgreven finished the maintenance at Purina around 11:00 or 11:30 a.m., and left Purina to go to Fabick Cat to empty out the oil barrels he used during the maintenance. He believes that he left Fabick Cat at about 12:40 or 12:50 p.m., in his F-350 truck, and was heading to his home in Ellisville. He had a chocolate muffin in his truck with him, as he typically brought a candy bar or a cupcake or something similar along with him in his truck so that he could have something quick to eat if his blood sugar was low. He had not eaten the chocolate muffin, but testified that nothing prevented him from taking a break to check his blood sugar level, eat the muffin, or stop somewhere to get something to eat. Mr. Holtgreven was in a hurry to get home that day because his son had sold an engine and the buyer was coming to their house to pick up the engine at 1:00 p.m. He wanted to be at the house when the buyer came because of the overhead hoist that was going to be used to load the engine into the buyer's vehicle.

Mr. Holtgreven's normal route to his home in Ellisville from Fabick Cat does not take him anywhere close to the City of O'Fallon, Missouri. He usually takes Fabick Drive to Bowles Avenue and gets on the outer road of I-44 West. He then takes 141 to Manchester and then to

Meadow Lane, where his home is located. On April 21, 2007, however, Mr. Holtgreven got on I-44 East and then took I-270 North to I-70. He believes that when he was attempting to drive home, he was suffering from diabetic shock, which affected his ability to drive and which caused him to be unable to clearly remember what happened. He testified that he recalled getting on I-270 North at some point, and that he remembers that he wanted to get off at Manchester Road but his hands wouldn't turn that way. He does not remember driving on I-70 and does not remember anything from I-70 to the dead end road where he stopped.

On April 21, 2007, Defendant Officer Sidney McDonald was on-duty as a police officer for the City of O'Fallon, Missouri. While on-duty, he received a radio call from a St. Charles County dispatcher, who told him that there was a vehicle driving erratically on East Tara Lane. East Tara Lane runs in a generally east-west direction and has one lane of traffic in each direction. It turns into North Service Road at or near Highway 79. Officer McDonald drove his marked patrol cruiser toward East Tara Lane to investigate the report. He located the vehicle traveling eastbound on East Tara Lane and observed the vehicle traveling erratically. The vehicle was a utility-type truck that had a pick-up cab with large utility compartments located where the bed of the pick-up truck would normally be located, and there was no window in the back of the cab of the truck.

Officer McDonald activated his lights and sirens, but the driver did not stop the vehicle. Officer McDonald continued to pursue the vehicle and observed the vehicle swerve several times into the westbound (oncoming) traffic lane. He also observed the vehicle proceed all the way over to the shoulder of the westbound (oncoming) lane of East Tara Lane. Officer McDonald reported his status and the details of the pursuit on his radio to update the dispatcher and other

officers responding to the call. Due to the erratic driving and failure to stop, Officer McDonald believed that the driver might be impaired by alcohol or drugs.

The vehicle continued on East Tara Lane and then on North Service Road. It began to slow at the intersection of North Service Road and Brown Road and the vehicle's brake lights were activated, so Officer McDonald believed that the driver might attempt to turn onto Brown Road. However, the vehicle did not turn, rather it continued on North Service Road until it came to a dead end. Officer McDonald had been following the vehicle for several minutes with his lights and sirens activated before the vehicle finally stopped at the dead end.

Officer McDonald stopped his patrol cruiser about 50-60 feet behind the vehicle. He drew his service weapon and took a defensive position behind the front driver's side door of his patrol cruiser. He repeatedly and loudly ordered the driver of the vehicle to show his hands and exit the vehicle. The driver failed to show his hands or exit the vehicle. Through Officer McDonald's experience as a police officer, he found the driver's erratic driving, refusal to initially stop his vehicle, and refusal to follow commands to exit the vehicle to be consistent with someone who was impaired by alcohol or drugs or who was trying to conceal some type of criminal activity. Officer McDonald was not aware of the driver's mental or physical condition or of whether the driver had any weapons in his vehicle.

Defendant Officer Stephen Schneider and Defendant Officer Joseph Litzinger were also on-duty as police officers for the City of O'Fallon, Missouri on April 21, 2007. While on-duty, Officers Schneider and Litzinger received information over their radio of a vehicle driving erratically on East Tara Lane that was being pursued by Officer McDonald. According to the information received by the officers, the driver of the vehicle was driving errratically and was not

stopping for Officer McDonald.  Both Officers Schneider and Litzinger drove their marked patrol cruisers toward East Tara Lane to assist Officer McDonald.  By the time they caught up with Officer McDonald, his marked patrol cruiser was stopped near the dead end of North Service Road, behind a utility-type truck.  Officers Schneider and Litzinger parked their patrol cruisers some distance behind Officer McDonald's patrol cruiser.  Officer Schneider proceeded to the passenger's side of Officer McDonald's patrol cruiser.  Officer Litzinger, a designated K-9 unit, retrieved his dog from his patrol cruiser, secured the dog behind Officer McDonald's patrol cruiser, and proceeded to the passenger's side with Officer Schneider.  While the officers were proceeding toward Officer McDonald's patrol cruiser, Officer McDonald was loudly ordering the driver to show his hands and exit the vehicle.  The driver failed to show his hands or exit the vehicle.  Through their respective experiences as police officers, Officers Schneider and Litzinger both found the description of the driver's erratic driving, his refusal to initially stop his vehicle, and his refusal to follow commands to exit the vehicle to be consistent with someone who was impaired by alcohol or drugs or who was trying to conceal some type of criminal activity.  Neither officer was aware of the driver's mental or physical condition or of whether the driver had any weapons in his vehicle.

Mr. Holtgreven testified that after he stopped his truck, all that he remembers is laying back in the seat and feeling like he was fading completely out.  He was not aware of what was going on around him.  He testified at his deposition that, "When I stopped on the road, I mean I was out.  I was - I was done for."  He does not recall the officers instructing him to show his hands and exit the vehicle, nor does he recall seeing the officers approach his vehicle.

Officer McDonald was able to partially observe the driver's face in the large side-view driver's side mirror and he could see the driver sitting on the driver's side of the vehicle. It appeared to Officer McDonald at one point that the driver was looking back at him in the side-view mirror. He continued to loudly order the driver to show his hands and exit the vehicle, but the driver failed to comply with those orders.

Officers Schneider and Litzinger used their training and judgment to decide to approach on the passenger's side of the vehicle. As they approached the vehicle, they had their service weapons drawn. They reached the rear bumper and were unable to observe the driver in the vehicle from that vantage point. So, they proceeded along the side of the vehicle, toward the passenger's side door. Upon reaching the door, Officers Schneider and Litzinger were able to see the driver, who was looking toward them. As Officers Schneider and Litzinger approached on the passenger's side of the vehicle, Officer McDonald approached on the driver's side of the vehicle, with his service weapon drawn. As he reached the driver's side door of the vehicle, he was able to observe the driver's face in the side-view mirror, and he saw the driver looking toward the passenger's side of the cab of the vehicle.

As the driver was looking toward Officers Schneider and Litzinger, Officer Schneider loudly ordered the driver to show his hands and exit the vehicle, but the driver failed to comply with his order. Officer McDonald opened the driver's side door, grabbed the driver, pulled him out of the vehicle, and took him to the ground in an effort to secure and handcuff him. Officers Schneider and Litzinger observed Officer McDonald's actions. The driver was combative and resisted Officer McDonald's efforts to handcuff him. While struggling with the driver, Officer McDonald repeatedly ordered him to stop resisting and to give him his hands, but the driver failed

to comply with the orders. At one point, the driver was laying face down on his stomach, with his arms and hands underneath him. Officer McDonald was unable to pull the driver's hands behind his back to handcuff him. The driver continued to struggle and to resist Officer McDonald's efforts to handcuff him. During the struggle, the driver struck Officer McDonald at least once in the ribs.

After Officer McDonald removed the driver, Officers Schneider and Litzinger ran around to the driver's side of the vehicle to assist Officer McDonald. They saw the driver struggling with Officer McDonald. Officers Schneider and Litzinger both removed the dart pack from the end of their tasers to expose the drive-stun tip. The drive stun tip of the taser requires the user to touch the tip to the individual to deliver an electrical charge in order to subdue the individual. The dart pack on the taser enables the user to deploy two small darts that strike an individual in the body to allow the user to deliver an electrical charge to the individual through the wires connected from the darts to the taser. Officers Schneider and Litzinger loudly and repeatedly ordered the driver to stop resisting, but the driver failed to comply with their orders. As a result, both officers used the drive-stun tip of their tasers to deliver an electrical charge to the driver in an attempt to subdue him. However, the action had no effect, the driver continued to resist, and Officer McDonald was still unable to handcuff him.

Officers Schneider and Litzinger continued to order the driver to stop resisting and the driver continued to fail to comply with their orders. The officers replaced the dart pack on the end of their tasers and deployed the two small darts. The darts struck the driver in his back and delivered an electrical charge to the driver. The electrical charge did not subdue the driver and he continued to resist. The officers again discharged their tasers to try to subdue the driver, and this

time they were finally able to do so.  Officer McDonald was able to pull the driver's hands behind

his back and handcuff him.  After the driver was handcuffed, none of the three officers present

used any further force against the driver.  Officer McDonald rolled off to the side, due to the

injury he sustained to his ribs.  Officer McDonald remained on the ground following the incident

until a fellow officer transported him to an urgent care facility.

During the struggle, Officer McDonald never struck the driver on his face or head.  Other

than the use of their tasers, Officers Schneider and Litzinger did not use any other force against

the driver while trying to subdue him.  Neither Officer Schneider nor Officer Litzinger physically

touched or struck the driver during the struggle.  None of the officers ever observed a medical

alert bracelet or necklace being worn by the driver or any other indication that the driver had any

type of medical condition.  Mr. Holtgreven stated that he did not generally wear a medical alert

bracelet or necklace because his was made of metal and his job requires him to work with

electricity.

Mr. Holtgreven does not remember being removed from the vehicle or struggling with the

officers.  He testified that he had no idea what was going on until he was tasered.  He remembers

being curled up with his stomach "pulsing" and described the pain as "the worst feeling I had ever

felt in my whole life."  After the pulsing quit, he felt his hands go behind his back and he was

handcuffed.  He remembers that after he was handcuffed, he was rolled over face-up.  He also

remembers that none of the officers struck him or tasered him after he was handcuffed.

After the driver was handcuffed, he began asking something to the effect of, "where am I,

what's going on?"  Officer Schneider generally told the driver that he had failed to pull over for

the cops and that he had failed to get out of his vehicle.  Officer Schneider escorted the driver to

the rear bumper of the vehicle and allowed him to sit down. While seated on the rear bumper, the driver told Officer Schneider that he was a diabetic. Officer Schneider identified the driver as Christopher Holtgreven. At some point while he was seated on the rear bumper, Mr. Holtgreven overheard one of the officers excitedly telling another officer that he had not used his taser in two years and was glad he got to try it out. Mr. Holtgreven was treated on the scene by paramedics and was later transported to the hospital. Officer Schneider rode to the hospital with Mr. Holtgreven, and stayed at the hospital with him while he was being treated for diabetic shock. While Officer Schneider and Mr. Holtgreven went to the hospital, Officer Litzinger stayed at the scene of the incident to secure the truck. He contacted Mr. Holtgreven's employer and a person from the company came to the scene to take possession of the vehicle.

Based upon Officer Schneider's observations of what happened during the struggle, he believes that the abrasions on Mr. Holtgreven's left cheek and left side of his forehead were caused by Mr. Holtgreven rubbing his face against the road surface. Officer Schneider also observed four small puncture marks on Mr. Holtgreven's back that were caused by the darts from the tasers. He did not see any other abrasions, puncture marks, or other physical signs of injury on Mr. Holtgreven's body. After being treated, Mr. Holtgreven left the hospital that same evening with a woman who told Officer Schneider that she was Mr. Holtgreven's wife. Officer Schneider is not aware of any formal charges being filed against Mr. Holtgreven.

Mr. Holtgreven testified that he does not know of any scarring or visible signs on his back from the four puncture marks where the taser darts struck him. Apparently, the four puncture marks were not a problem within a couple days after the incident and have completely healed. He also testified that he had an abrasion on the left side of his forehead and on his left cheek. The

abrasions were not painful and fully healed in about three weeks, with no scarring. He does not know what caused the abrasions, but he believes that they were probably not caused by any of the officers striking him at those locations. Additionally, he did not receive any stitches while at the hospital.[2]

## III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

_____

[2]In his deposition, Mr. Holtgreven discussed an injury to his wrist that became painful after the April 21, 2007 incident. He did not complain much about pain in his left wrist or hand at the hospital, but he eventually went to see a doctor about the pain, approximately one month after the incident. The wrist injury apparently required surgery and some physical therapy.

Plaintiffs have failed to properly demonstrate that any injury to Mr. Holtgreven's wrist was actually caused by the April 21, 2007 incident. As noted by Defendants in their Reply, the Eighth Circuit has clearly established that "[w]hen an injury is sophisticated, proof of causation generally must be established by expert testimony." *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002). Mr. Holtgreven's wrist injury is deemed "sophisticated" because there was not a "sudden onset" and the injury was not visible. *Id.* Because Plaintiffs did not provide expert testimony attributing the wrist injury to the April 21, 2007 incident, the Court will not consider Mr. Holtgreven's deposition testimony about the injury at this time.

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the absence of any genuine issue of material fact. *Id.* at 323; *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson*, 943 F.2d at 883.

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV. DISCUSSION

### A. EXCESSIVE AND UNREASONABLE FORCE

In Count I of the First Amended Complaint, Plaintiff Christopher Holtgreven alleges that Defendant Officers Sidney McDonald, Stephen Schneider, and Joseph Litzinger used excessive and unreasonable force against him.

"'The right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures.'" *Ngo v. Storlie*, 495 F.3d 597, 604 (8th Cir. 2007) (quoting *Samuelson v. City of New Ulm*, 455 F.3d 871, 877 (8th Cir. 2006)). Fourth Amendment excessive force claims are analyzed "under a reasonableness standard to determine whether, in light of the facts and circumstances, the officer's actions were objectively reasonable." *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations and citations omitted). The Court must consider factors such as the severity of the suspected crime, whether the suspect poses an immediate threat to the safety of the officer or

others, and whether he is actively resisting or attempting to evade arrest. *Id.* Further, the determination of reasonableness must allow for the fact that "police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Gill*, 546 F.3d at 562 (citing *Graham*, 490 U.S. at 396-97). This inquiry is objective, questioning "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

In this case, the Court finds that the use of force against Plaintiff Christopher Holtgreven by Defendant Officers McDonald, Schneider, and Litzinger was objectively reasonable and did not violate Mr. Holtgreven's constitutional rights. After receiving reports that a truck was driving erratically on East Tara Lane, Officer McDonald located the truck and observed first-hand that Mr. Holtgreven was driving erratically and swerving into the oncoming lane of traffic, in violation of Mo. Rev. Stat. § 304.015. When Officer McDonald activated the lights and siren on his marked patrol cruiser, Mr. Holtgreven failed to pull over or stop, in violation of Mo. Rev. Stat. § 304.022. The actions of Mr. Holtgreven posed a threat to public safety and were consistent with a person who was under the influence of alcohol or drugs. Thus, the officers "had probable cause, indeed, a public duty to stop the truck and arrest its driver." *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (citing *McCoy v. City of Monticello*, 342 F.3d 842, 848 (8th Cir. 2003)).

When Mr. Holtgreven finally stopped the truck, the officers repeatedly ordered him to show his hands and get out of the vehicle, but Mr. Holtgreven failed to do so. In such a situation, it is objectively reasonable for an officer to use force to pull the person from the car in order to

handcuff him.  *Id.* (citing *Smith v. Ball State Univ.*, 295 F.3d 763, 770-71 (7th Cir. 2002);

*McGruder v. Heagwood*, 197 F.3d 918, 920 (8th Cir. 1999); *Foster v. Metro. Airports Comm'n*,

914 F.2d 1076, 1082 (8th Cir. 1990)).  Thus, Officer McDonald's act of opening Mr.

Holtgreven's door, grabbing him, and pulling him out of the vehicle, which was done for the

purpose of securing and handcuffing Mr. Holtgreven, was objectively reasonable.

Additionally, the force used by the three officers prior to handcuffing Mr. Holtgreven was

objectively reasonable because the government's interests outweighed the intrusion on Mr.

Holtgreven's Fourth Amendment rights.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  First,

Mr. Holtgreven clearly posed a threat to the officers.  After Officer McDonald pulled Mr.

Holtgreven from his truck and attempted to handcuff him, Mr. Holtgreven began violently

struggling with Officer McDonald.  Mr. Holtgreven was so combative that he caused an injury to

Officer McDonald's ribs.  While Mr. Holtgreven apparently did not have any weapons on his

person, the officers did not know if he was carrying a weapon of any sort.  Second, Mr.

Holtgreven was actively resisting arrest.  During the struggle, all three of the officers loudly and

repeatedly warned Mr. Holtgreven to stop resisting, but he failed to submit.  While it is now clear

that Mr. Holtgreven's resistance was the result of his diabetic shock, the officers were not aware

of his physical condition and instead reasonably believed that he was under the influence of

alcohol or drugs.  Finally, while the pain caused by the use of a taser is not insignificant, the actual

injuries suffered by Mr. Holtgreven as a result of the incident were minimal.  Moreover, various

courts have determined that the use of a taser or stun gun in response to a person resisting arrest

is reasonable.  *See, e.g.*, *Buckley v. Haddock*, 292 Fed. Appx. 791, 796 (11th Cir. 2008); *Draper

v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004); *Hinton v. City of Elwood, Kan.*, 997 F.2d

774, 777 (10th Cir. 1997). The officers only used their tasers to the extent required to actually subdue Mr. Holtgreven. Thus, the Court finds that the force used while Mr. Holtgreven was resisting arrest was objectively reasonable.

It is undisputed that none of the officers used any force against Mr. Holtgreven after he was placed in handcuffs. Further, the Court has established that all of the force used against Mr. Holtgreven prior to this point was objectively reasonable. Thus, the total force used by Defendant Officers McDonald, Schneider, and Litzinger was objectively reasonable and did not violate Mr. Holtgreven's constitutional rights. *See generally Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006); *Janis v. Biesheuvel*, 428 F.3d 795 (8th Cir. 2005). Because there was no violation of Mr. Holtgreven's constitutional rights, the Court need not reach the issue of qualified immunity. The Court finds that Plaintiffs' excessive force claim against the Defendant Officers must fail.[3]

The Court finds that no genuine issue of material fact exists regarding the use of excessive force by Defendant Officers McDonald, Schneider, and Litzinger and Defendants are entitled to summary judgment on this claim.

---

[3]The Court notes that Plaintiffs apparently assert their claims against Defendant Officers McDonald, Schneider, and Litzinger in both their individual and official capacities. "A suit against a government actor in his official capacity is treated as a suit against the governmental entity itself." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, in this case, Plaintiffs' claims against Defendant Officers McDonald, Schneider, and Litzinger in their official capacities are actually claims against the City of O'Fallon, Missouri. A municipality cannot be held liable under § 1983 unless the individual defendants are found liable on the underlying constitutional claims. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007); *Walker v. Bonenberger*, 438 F.3d 884, 890 (8th Cir. 2006). Because the Court found that the Defendant Officers are not liable in their individual capacities for use of excessive and unreasonable force, Plaintiffs' claim against the City of O'Fallon similarly must fail.

### B. FAILURE TO INTERVENE

In Count II of the First Amended Complaint, Plaintiff Christopher Holtgreven alleges that Defendant Officers Sidney McDonald, Stephen Schneider, and Joseph Litzinger violated his constitutional rights by failing to intervene.

A defendant can be liable for failure to intervene under two different theories. *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 51-52 (1st Cir. 2005). The first theory posits whether the officer was "indeed present at [Plaintiff's] arrest with an opportunity to prevent the excessive use of force." *Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008). Alternatively, an officer can be liable where they are "instrumental in assisting the actual attacker or aggressor to place the victim in a vulnerable position." *Torres-Rivera*, 406 F.3d at 52. However, officers at the scene of an arrest can only be held liable for failing to intervene if there was an underlying violation of the arrestee's constitutional rights. *See Putman v. Gerloff*, 639 F.2d 415, 423-24 (8th Cir. 1981); *Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir. 1981). As established in the preceding section, the Court has determined that the officers did not violate Plaintiff Christopher Holtgreven's constitutional rights through the use of excessive force. Furthermore, Plaintiffs have not alleged any other constitutional violations. Because there is no underlying violation of constitutional rights, the Plaintiffs' failure to intervene claim against the Defendant Officers must fail.[4]

---

[4]Plaintiffs' failure to intervene claim fails with respect to the Defendant Officers in both their individual and official capacities. As set forth in the preceding footnote, Plaintiffs' claims against Defendant Officers McDonald, Schneider, and Litzinger in their official capacities are actually claims against the City of O'Fallon, Missouri. However, a municipality cannot be held liable under § 1983 unless the individual defendants are found liable on the underlying constitutional claims. Thus, because Defendant Officers McDonald, Schneider, and Litzinger are not liable for failure to intervene, the City of O'Fallon also cannot be held liable for failure to

The Court finds that no genuine issue of material fact exists regarding Plaintiff Christopher Holtgreven's failure to intervene claim and Defendants are entitled to summary judgment on this claim.

### C.    FALSE IMPRISONMENT

In Count III of the First Amended Complaint, Plaintiff Christopher Holtgreven seeks to recover from Defendant Officers Sidney McDonald, Stephen Schneider, and Joseph Litzinger for false imprisonment under Missouri law.

Under Missouri law, an action for false arrest or false imprisonment arises when there "'is confinement without legal justification by the wrongdoer of the person wronged.'" *Day v. Wells Fargo Guard Serv. Co.*, 711 S.W.2d 503, 504-05 (Mo. 1986) (en banc) (quoting *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. 1984) (en banc)). Thus, the two elements required for the offense are: "restraint of the plaintiff against his will, and the unlawfulness of that restraint." *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005).

In this case, the Court finds that the restraint was not unlawful because the officers had probable cause to arrest Plaintiff Christopher Holtgreven. An arrest can be valid, even without a warrant, if the police had probable cause to arrest the defendant. *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975). Probable cause exists where "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) (internal citations omitted). As previously noted, Officer McDonald observed first-hand that Mr. Holtgreven was driving erratically and swerving into the oncoming lane of traffic, in violation of Mo. Rev. Stat. §

---

intervene.

304.015.  Additionally, after Officer McDonald activated the lights and siren on his marked patrol cruiser, Mr. Holtgreven failed to pull over or stop, in violation of Mo. Rev. Stat. § 304.022. Because Officer McDonald personally observed Mr. Holtgreven's erratic driving and failure to pull over, he had probable cause to arrest Mr. Holtgreven.  Moreover, because Mr. Holtgreven's actions were consistent with those of a person who was under the influence of alcohol or drugs, it was reasonable for the officers to believe that Mr. Holtgreven was committing an alcohol- or drug-related offense.  Because the officers had probable cause to believe that Mr. Holtgreven was committing an offense, the arrest was valid and the state law false imprisonment claim must fail.

The Court finds that no genuine issue of material fact exists regarding Plaintiff Christopher Holtgreven's state law false imprisonment claim and Defendants are entitled to summary judgment on this claim.

### D.     ASSAULT AND BATTERY

In Count IV of the First Amended Complaint, Plaintiff Christopher Holtgreven seeks to recover from Defendant Officers Sidney McDonald, Stephen Schneider, and Joseph Litzinger for assault and battery under Missouri law.

Under Missouri law, the standard for determining whether a private individual is liable for assault and battery is different from the standard for determining whether a law enforcement officer is liable for assault and battery.  *Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 874 (8th Cir. 1999).  In the course of an arrest made with or without a warrant, a law enforcement officer is only liable for assault and battery if he or she uses "more force than is reasonably necessary."  *Neal v. Helbling*, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987).  The plaintiff has the burden of proving unreasonable force.  *Id.* (noting that "a plaintiff asserting that

he was battered in the course of an arrest must prove that the officer used unreasonable force in effecting it").

Plaintiff has failed to demonstrate that Defendant Officers McDonald, Schneider, and Litzinger used more force than was reasonably necessary. To summarize the lengthy analysis set forth by the Court above in the analysis of Plaintiffs' excessive and unreasonable force constitutional claim, Plaintiff Christopher Holtgreven posed a threat to public safety and to the individual officers. His refusal to exit his vehicle and his subsequent act of resisting arrest necessitated the use of force by the officers. Additionally, the officers only used their tasers to the extent needed to subdue Mr. Holtgreven; once he was subdued and placed in handcuffs, the officers did not use any more force. Based on these undisputed facts, the Court finds that Officers McDonald, Schneider, and Litzinger did not use more force than was reasonably necessary, and thus Plaintiff Christopher Holtgreven's state law assault and battery claim must fail.

The Court finds that no genuine issue of material fact exists regarding Mr. Holtgreven's assault and battery claim and Defendants are entitled to summary judgment on this state law claim.

### E.    NEGLIGENT TRAINING

In Count V of the First Amended Complaint, Plaintiff Christopher Holtgreven seeks to recover from the City of O'Fallon, Missouri for negligent training of their police officers.

Municipalities cannot be liable "under § 1983 on a respondent superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, liability can exist where a "policy or custom is the moving force behind a constitutional violation" or where training procedures or officer supervision is inadequate. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th

Cir. 1991); *Larkin v. St. Louis Housing Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In order to establish deliberate indifference, the plaintiff must demonstrate that the municipality "'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting *Thelma D. by Dolores A. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir. 1991)).

The Court need not reach the issue of deliberate indifference, because Plaintiff Christopher Holtgreven's failure to train claim can be denied on other grounds. "Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability.'" *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 526 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)); *see also McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (recognizing that "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim"); *Kiser v. City of Huron*, 219 F.3d 814, 816 (8th Cir. 2000) (noting that "when a § 1983 plaintiff seeks to hold a municipality liable based on its alleged inadequate training and supervision of its police officers that plaintiff must first establish that the officers' actions were unlawful"). This Court has found that Defendant Officers Sidney McDonald, Stephen Schneider, and Joseph Litzinger did not violate Plaintiff Christopher Holtgreven's constitutional rights. As a result, the City of O'Fallon cannot be liable for failure to train under § 1983 or *Monell* and Mr. Holtgreven's claim must fail.

The Court finds that no genuine issue of material fact exists regarding Plaintiff Christopher Holtgreven's failure to train claim and Defendants are entitled to summary judgment on this claim.

## F. NEGLIGENT HIRING

In Count VI of the First Amended Complaint, Plaintiff Christopher Holtgreven seeks to recover from the City of O'Fallon, Missouri under 42 U.S.C. § 1983 for negligent hiring of their police officers.

The Eighth Circuit has recognized that, with respect to a § 1983 negligent hiring claim against a municipality, "liability may not be imposed unless a plaintiff directly links the applicant's background with the risk that, if hired, that applicant would use excessive force." *Morris v. Crawford County*, 299 F.3d 919, 923 (8th Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)). However, as set forth in the preceding section, "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy*, 411 F.3d at 922. Because there was no underlying constitutional violation in this case, the City of O'Fallon cannot be held liable for negligent hiring under § 1983.

The Court finds that no genuine issue of material fact exists regarding Plaintiff Christopher Holtgreven's negligent hiring claim and Defendants are entitled to summary judgment on this claim.

## G. LOSS OF CONSORTIUM

Finally, in Count VII of the First Amended Complaint, Plaintiff Jackie Holtgreven seeks to recover from all Defendants for loss of consortium.

A spouse's loss of consortium claim "is wholly derivative and thus rises or falls with the success of the underlying claims of [the] injured spouse." *Menz v. New Holland N. Am., Inc.*, 507

F.3d 1107, 1115 (8th Cir. 2007) (citing *Wright v. Barr*, 62 S.W.3d 509, 537 (Mo. Ct. App. 2001). Because this Court found that summary judgment in favor of Defendants was proper on all of Plaintiff Christopher Holtgreven's claims, Plaintiff Jackie Holtgreven's loss of consortium claim likewise must fail. *Id.* Defendants are entitled to summary judgment on this claim.

## V.  CONCLUSION

The Court finds that no genuine issues of material fact exist with respect to any of Plaintiffs' claims. Each of these claims fails as a matter of law and Defendants are entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Sidney McDonald, Stephen Schneider, Joseph Litzinger, and the City of O'Fallon, Missouri's Motion for Summary Judgment [doc. #28] is **GRANTED**. Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

Dated this 8th Day of July, 2009

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE